UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| VIRGINIA D. COBURN, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | CAUSE NO.: 3:11-CV-471-TLS |
| SOUTH BEND COMMUNITY SCHOOL CORPORATION, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The Plaintiff, Virginia D. Corburn, proceeding pro se, filed an Employment Discrimination Complaint against her former employer, South Bend Community School Corporation, alleging that the School discriminated against her on the basis of her race in violation of Title VII when it terminated her employment as an instructional aide. The Defendant maintains that there are no genuine issues as to any material facts and that it is entitled to judgment as a matter of law. Despite receiving notice of the Defendant's Motion for Summary Judgment and being advised of the time and manner in which to respond, and despite the Court granting her additional time to respond after missing the original deadline, the Plaintiff has not responded to the Defendant's submissions. For the reasons set forth in this Opinion and Order, the Court finds that there is no evidence on which a reasonable jury could rely to find in the Plaintiff's favor, and the Defendant is thus entitled to judgment as a matter of law.

## BACKGROUND

On December 12, 2011, the Plaintiff filed her Complaint [ECF No. 1] alleging that her termination from employment was a violation of Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e-5. On January 15, 2012, the Defendant filed an Answer [ECF No. 8], and on September 24 filed a Motion for Summary Judgment [ECF No. 19], Brief in Support [ECF No. 20], and Designation of Evidence [ECF No. 21]. The Defendant also sent the Plaintiff a Notice [ECF No. 22], advising her of the nature of its request for judgment as a matter of law, the manner in which she was required to respond to defeat its Motion, and the time frame to respond. *See* N.D. Ind. L.R. 56-1(f) (requiring a party seeking summary judgment against an unrepresented party to serve that party with a notice describing summary judgment procedures). The Plaintiff did not respond to the Defendant's Motion and, on October 31, the Defendant filed a Reply [ECF No. 25], requesting that the Court find that the Plaintiff failed to demonstrate any genuine issues of material fact and granting the Defendant's Motion in its entirety.

On November 14, 2012, the Court held a telephone conference with the Plaintiff and counsel for the Defendant. The Plaintiff expressed a desire to respond to the Defendant's Motion, and the Court gave her until November 23 to file a response. The Plaintiff has not filed a response.

## STATEMENT OF FACTS

The following facts are supported by citations to materials in the record:

The Plaintiff, an African-American female, began working for the Defendant as a substitute teacher. She was moved to the position of instructional aide in 2005. At the beginning of the 2010–2011 school year, she was assigned to work in the third grade classroom at Lincoln Primary School with teacher Bridget Huffman, with whom she had worked for five years. As an instructional assistant, the Plaintiff did not sign a contract and worked under the direction of the

classroom teacher.

Huffman taught the Explorer Program in her class, which was a special program designed to help students who were not performing at grade level. Early in the school year, Huffman's third grade Explorer classroom was combined with the second grade Explorer Program. Both the teacher and the instructional assistant positions for the second grade were eliminated. The principal of Lincoln Primary School, Nicole Medich, selected the Plaintiff as the instructional assistant who would remain for the newly combined class. She made the selection based on performance, rather than seniority or education. On September 17, 2010, during one of Medich's conversation with the Plaintiff regarding her decision to retain the Plaintiff as the instructional assistance, Medich discussed the importance of the Plaintiff's daily attendance. Medich specifically told the Plaintiff that although Medich's predecessor had allowed the Plaintiff to be absent during the day to attend a class at Indiana University South Bend, the practice would not be allowed to continue. Medich also noted that the Plaintiff's 2009–2010 evaluation cited her need to make a better commitment to her job in the area of attendance. Medich communicated that daily attendance was required, excused only by a proper notification of the Plaintiff's absence.

In early November, Medich realized that fifteen minutes of the Plaintiff's day was unscheduled and should have been scheduled so that she was assisting children in the classroom. On November 8, Medich advised the Plaintiff that she was making a schedule change to address that fifteen-minute period. At the end of the conversation, the Plaintiff advised that she would be absent the next day for a physician's appointment. That same day, three teachers, including Huffman, came to Medich to advise her that the Plaintiff was unhappy and frustrated with the

schedule change, and heard the Plaintiff say that she would by staying away from work until she was fired.

The Defendant's procedure for reporting an absence required that an employee call "Subfinder" for absences reported before 6:30 AM, and call the School officer for absences reported after 6:30 AM. The Plaintiff was familiar with the process and had used it many times. The Plaintiff was absent on November 9, consistent with her statement to Medich on November 8. She was also absent the following day, November 10, but failed to leave a message on Subfinder or to call the School office.

When the Plaintiff returned to school on November 11, Medich told her that she was going to recommend the termination of the Plaintiff's employment based upon her failure to properly report her absence on November 10. The Plaintiff objected and told Medich that she had called Subfinder and tried to leave a message. Medich checked with the Central Office and was informed that Subfinder was working properly. Medich also advised the Plaintiff that she had exceeded her allocation for paid personal business hours. Each instructional assistant is allocated twelve hours of paid personal business leave for the school year. For the absences on November 9 and 10, the Plaintiff accumulated twelve hours of personal business leave. In addition, the Plaintiff had already used six hours of personal business leave for an absence on November 2. The Plaintiff countered by telling Medich that, in the past, the School secretary had simply re-allocated her hours to another category of leave, such as sick leave. According to the Defendant, none of the secretaries in the school district had the authority to reallocate a personal business day to another paid leave designation so that an employee could be paid for a day that otherwise exceeded their allocation.

4

Based on the Plaintiff's previous history of poor attendance, her statement on November 8 that she would stay out until she was fired, her failure to properly report her absence on November 10, and her use of more professional business leave hours than she was allocated, Medich recommended to the Board of School Trustees that the Plaintiff's employment be terminated. The Board approved the recommendation and termination.

## ANALYSIS

### A. Summary Judgment Standard

The standards applicable to summary judgment are well established. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in her favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Additionally, as set forth in Rule 56(e):

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e)(1)–(4).

### B. Race Discrimination

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any

5

individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove his discrimination case under the direct method or indirect method of proof. *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). "Under the 'direct method,' the plaintiff may avoid summary judgment by presenting sufficient evidence, either direct or circumstantial, that the employer's discriminatory animus motivated an adverse employment action." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). Two types of evidence are permissible under the direct method: (1) evidence that would prove the fact in question without reliance on inference or presumption (direct evidence), and; (2) evidence that allows a fact finder to infer intentional discrimination by the decision maker (circumstantial evidence). *Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (quoting *Troupe*, 20 F.3d at 737); *Venturelli v. ARC Cmty. Servs., Inc.*, 350 F.3d 592, 599 (7th Cir. 2003); *see also Sylvester v. SOS Children's Vills. Ill., Inc.*, 453 F.3d 900, 903–04 (7th Cir. 2006) (clarifying that circumstantial evidence need not have a mosaic-like character to preclude summary judgment but need only allow the trier of fact to infer intentional discrimination by the decisionmaker). This circumstantial evidence "must point directly to a discriminatory reason for the employer's action." *Jordan v. City of Gary, Ind.*, 396 F.3d 825, 832 (7th Cir. 2005); *see also Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005).

The Seventh Circuit has recognized three distinguishable kinds of circumstantial evidence of intentional discrimination: (1) "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn;" (2) "evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff

6

other than in the characteristic (pregnancy, sex, race, or whatever) on which an employer is forbidden to base a difference in treatment received systematically better treatment;" and (3) "evidence that the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief." *Troupe*, 20 F.3d at 736.

There is no evidence that would point directly to racial animus as the reason for the Plaintiff's termination. Accordingly, the Court will, as the Defendant has in its Brief in support of summary judgment, analyze the Plaintiff's claim under the indirect burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this method, which provides a means of evaluating indirect evidence of discrimination at the summary judgment stage, *Oest v. Ill. Dept. of Corrs.*, 240 F.3d 605, 612 (7th Cir. 2001), the Plaintiff must first establish a prima facie case of discrimination by showing that: "(1) she is a member of a protected class, (2) her job performance met [the employer's] legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff," *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 750–51 (7th Cir. 2006). If the prima facie case is established, it triggers a presumption of discrimination and the burden then shifts "to the employer to articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802; *Burks*, 464 F.3d at 751. When the employer does so, the burden shifts back to the plaintiff, who must present evidence that the stated reason is a "pretext," which in turn permits an inference of unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 804; *Burks*, 464 F.3d at 751.

It is undisputed that the Plaintiff is a member of a protected class and that she suffered an

adverse employment action when she was terminated. The Plaintiff's prima facie case fails, however, on the remaining two prongs. The Defendant submits that the Plaintiff was not meeting its legitimate expectations in the area of attendance. In her Charge of Discrimination with the EEOC, the Plaintiff claimed that another employee, identified as Faith Z., was not required to follow the same reporting requirements as the Plaintiff and, in fact, did not report an absence on November 12, 2010. The Plaintiff also claimed to Medich that she had been allowed in the past to reallocate her hours from personal business leave to another type of leave when she would have otherwise exceeded her allowable hours for personal business.

"Where a plaintiff claims . . . that an employer's legitimate expectations were disparately applied, the second and fourth elements of the *prima facie* case are closely intertwined with the pretext analysis, and the two inquiries may be merged and considered together." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008); *see also Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 477–78 (7th Cir. 2010) ("In some cases . . . the issue of satisfactory performance and the question of pretext overlap" because "[w]hen the employer asserts as the nondiscriminatory reason for termination that the employee was not meeting legitimate job expectations, the credibility of the employer's assertion is at issue for both the second element of the plaintiff's prima facie case and the pretext analysis."); *Peele v. Country Mutual Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) ("When a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate manner . . . the second and fourth prongs of *McDonnell Douglas* merge—allowing the plaintiff to establish a prima facie case, stave off summary judgment for the time being, and proceed to the pretext inquiry."); *Curry v. Menard*, 270 F.3d 473, 478 (7th Cir. 2001) (stating that a court can

8

assume that a plaintiff has met the legitimate expectations element of a prima facie test where that element dovetails with the issue of pretext); *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 886 (7th Cir. 2001) ("As we have pointed out on several occasions, this issue of satisfactory job performance often focuses on the same circumstances as must be scrutinized with respect to the matter of pretext."); *Oest*, 240 F.3d at 612 n.3 (noting that the "district court correctly held that the second prong, meeting the employer's legitimate business expectations, was not necessary to the analysis" because "the people judging [the plaintiff's] performance were the same she accused of discriminating against her"); *Flores v. Preferred Tech. Group*, 182 F.3d 512, 515 (7th Cir. 1999) (stating that it made "little sense" to discuss whether the plaintiff was meeting her employer's reasonable expectations where she admitted that she broke the rules but claimed that the employer disciplined her more harshly than non-Hispanic rule-breakers). Because, here, the Plaintiff's prima facie case overlaps with the similarly-situated prong and the pretext analysis, the Court will proceed directly to the question of pretext.

In the context of employment discrimination cases, a pretext is a dishonest explanation for the adverse employment action. *See Faas*, 532 F.3d at 642. To show that the defendant's proffered reason is pretextual, the plaintiff "must identify such weaknesses, implausibilities, inconsistencies, or contradictions in the purported reasons that a jury could find them unworthy of credence and hence infer that [the defendant] did not act for the asserted non-discriminatory reasons." *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 541 (7th Cir. 2007). If the defendant honestly believed the reasons it gave, the plaintiff's effort to show pretext fails, regardless of whether that reason was "foolish, trivial or baseless." *Id.*; *see also Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006) ("[T]he question in a discrimination case is not whether

9

the employer's stated nondiscriminatory ground for the action of which the plaintiff is complaining is correct but whether it is the true ground of the employer's action."). Thus, the plaintiff cannot establish pretext merely by showing that defendant's decision to terminate him was "mistaken" or "ill considered." *Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005) (quoting *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000)).

Thus, the pretext inquiry is not whether the Plaintiff was actually meeting expectations. Rather, the Court's inquiry is whether Medich's proffered reason for recommending the Plaintiff's termination—her attendance issues—was a lie to cover up a true motivation of racial animus. Medich had information from three teachers that, after learning of a schedule change, the Plaintiff stated that she intended to be absent until she was fired. The Plaintiff has presented no evidence to suggest that Medich did not honestly believe that the teachers accurately reported what the Plaintiff said. Moreover, the Plaintiff then proceeded to be absent for two days. It is undisputed that, for the second day of her absence, the Plaintiff did not leave a message with Subfinder or the School office, the known procedure for reporting an absence. Although the Plaintiff claims that Subfinder was not working properly, she has no evidence to dispute that Medich instead believed the information she received from the Central Office, which was that Subfinder was functioning correctly. Additionally, the Plaintiff does not deny that she exceeded her allowable personal business leave hours for the school year. Her only excuse, that she was allowed to do it in the past by the secretary, does not create an inference that Medich was lying when she presented the exceeded hours as a reason for the Plaintiff's termination. The Defendant has presented evidence that none of the school secretaries had the authority to make such allocations. Thus, even if it had been done for the Plaintiff in the past, it is not unbelievable that

Medich would reject it as a reason to allow her to do it during the 2010–2011 school year, particularly since Medich had already stressed to the Plaintiff the importance of her daily attendance as the instructional assistant for the Explorer Program, including informing the Plaintiff that past practices allowing certain absences would not be allowed to continue.

The Plaintiff attempts to identify a contradiction and inconsistency by alleging that another employee, Faith Zehner, did not report her absence but was treated more favorably. Zehner was a math coach at Lincoln. However, on November 12, 2010, the day the Plaintiff claims Zehner failed to report her absence, she was not actually absent, but was attending math coach's professional development outside the Lincoln school building as she was required to do every Friday. The Plaintiff has not presented any evidence to dispute this fact, nor is there any evidence in the record that any other employee was allowed to be absent without following the procedures for calling Subfinder of the School office.

The evidence in the record is that Medich decided to recommend that the Plaintiff's employment be terminated after Medich identified problems with the Plaintiff's attendance. The Plaintiff has not presented evidence that these reasons were a pretext for racial discrimination. There are no triable issues of material fact and the Defendant is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant South Bend Community School Corporation's Motion for Summary Judgment [ECF No. 19]. The Clerk will enter judgment in favor of the Defendant and against the Plaintiff.

SO ORDERED on November 28, 2012.

                                                               s/ Theresa L. Springmann  
                                                               THERESA L. SPRINGMANN  
                                                               UNITED STATES DISTRICT COURT  
                                                               FORT WAYNE DIVISION