# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| VIRGINIA D. COBURN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO.: 3:11-CV-471-TLS |
| SOUTH BEND COMMUNITY SCHOOL CORPORATION, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The Plaintiff, Virginia D. Corburn, proceeding pro se, filed an Employment Discrimination Complaint against her former employer, South Bend Community School Corporation, alleging that the School discriminated against her on the basis of her race in violation of Title VII when it terminated her employment as an instructional aide. The Defendant maintains that there are no genuine issues as to any material facts and that it is entitled to judgment as a matter of law. The Plaintiff responded with a list of twenty-one items for review by the Court, including a "Brief Status Report." For the reasons set forth in this Opinion and Order, the Court finds that there is no competent evidence on which a reasonable jury could rely to find in the Plaintiff's favor, and the Defendant is thus entitled to judgment as a matter of law.

## BACKGROUND

On December 12, 2011, the Plaintiff filed her Complaint [ECF No. 1] alleging that her termination from employment was a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5. On January 15, 2012, the Defendant filed an Answer [ECF No. 8], and on September 24 filed a Motion for Summary Judgment [ECF No. 19], Brief in Support

[ECF No. 20], and Designation of Evidence [ECF No. 21]. The Defendant also sent the Plaintiff a Notice [ECF No. 22], advising her of the nature of its request for judgment as a matter of law, the manner in which she was required to respond to defeat its Motion, and the time frame to respond. *See* N.D. Ind. L.R. 56-1(f) (requiring a party seeking summary judgment against an unrepresented party to serve that party with a notice describing summary judgment procedures). The Plaintiff did not file a timely response to the Defendant's Motion and, on October 31, the Defendant filed a Reply [ECF No. 25], requesting that the Court find that the Plaintiff failed to demonstrate any genuine issues of material fact and granting the Defendant's Motion in its entirety.

On November 14, 2012, the Court held a telephone conference with the Plaintiff and counsel for the Defendant. The Plaintiff expressed a desire to respond to the Defendant's Motion, and the Court gave her until November 23 to file a response, reminding her of the need to comply with Federal Rule of Civil Procedure 56 and the Court's Local Rules. The Plaintiff filed a response, and the Defendant replied, pointing out the deficiencies in the Plaintiff's submission.

## SUMMARY JUDGMENT STANDARD

The standards applicable to summary judgment are well established. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in her favor. *Goodman v. Nat'l*

*Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* N.D. Ind. L.R. 56-1(a) (stating that the movant must provide a "'Statement of Material Facts' that identifies the facts that the moving party contends are not genuinely disputed"). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed in Rule 56 to designate specific material facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000); N.D. Ind. L.R. 56-1(b) (directing that a response in opposition to a motion for summary judgment must include "a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary"). According to Rule 56:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Additionally, as set forth in Rule 56(e):

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e)(1)–(4).

Here, the Plaintiff did not file separately, or with her response, a statement of genuine disputes or provide the Court with any list of material facts as to which she contends there exists a genuine issue necessary to be litigated. Even if the Court construes the Plaintiff's Brief Status Report as her statement of genuine disputes, it is wholly devoid of citation to particular portions of materials in the record. Neither does it show that the Defendant's cited materials fail to establish the absence of a genuine dispute, or that the Defendant cannot produce admissible evidence to support its statement of the facts. "[D]istrict courts are not obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions." *Waldridge, v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). Even pro se litigants must follow rules of civil procedure. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002) (stating that although court had to construe facts in favor of the plaintiff, that did not diminish the plaintiff's "responsibility to present those facts in the manner dictated by local court rules"). Even if the Plaintiff had supported her statement with citations to the exhibits she provides, the exhibits themselves are either inadmissible, or their relevance indiscernible. The court will discuss the exhibits in more detail below.

## STATEMENT OF FACTS

**A.     The Undisputed Facts**

The following facts are supported by citations to materials in the record:

The Plaintiff, an African-American female, began working for the Defendant as a substitute teacher. She was moved to the position of instructional aide in 2005. At the beginning

4

of the 2010–2011 school year, she was assigned to work in the third grade classroom at Lincoln Primary School with teacher Bridget Huffman, with whom she had worked for five years. As an instructional assistant, the Plaintiff did not sign a contract and worked under the direction of the classroom teacher.

Huffman taught the Explorer Program in her class, which was a special program designed to help students who were not performing at grade level. Early in the school year, Huffman's third grade Explorer classroom was combined with the second grade Explorer Program. Both the teacher and the instructional assistant positions for the second grade were eliminated. The principal of Lincoln Primary School, Nicole Medich, selected the Plaintiff as the instructional assistant who would remain for the newly combined class. She made the selection based on performance, rather than seniority or education. On September 17, 2010, during one of Medich's conversation with the Plaintiff regarding her decision to retain the Plaintiff as the instructional assistance, Medich discussed the importance of the Plaintiff's daily attendance. Medich specifically told the Plaintiff that although Medich's predecessor had allowed the Plaintiff to be absent during the day to attend a class at Indiana University South Bend, the practice would not be allowed to continue. Medich also noted that the Plaintiff's 2009–2010 evaluation cited her need to make a better commitment to her job in the area of attendance. Medich communicated that daily attendance was required, excused only by a proper notification of the Plaintiff's absence.

In early November, Medich realized that fifteen minutes of the Plaintiff's day was unscheduled and should have been scheduled so that she was assisting children in the classroom. On November 8, Medich advised the Plaintiff that she was making a schedule change to address

that fifteen-minute period. At the end of the conversation, the Plaintiff advised that she would be absent the next day for a physician's appointment. Later, that same day, three teachers, including Huffman, came to Medich to advise her that the Plaintiff was unhappy and frustrated with the schedule change, and had heard the Plaintiff say that she would by staying away from work until she was fired.

The Defendant's procedure for reporting an absence required that an employee call "Subfinder" for absences reported before 6:30 AM, and call the School office for absences reported after 6:30 AM. The Plaintiff was familiar with the process and had used it many times. The Plaintiff was absent on November 9, consistent with her statement to Medich on November 8. She was also absent the following day, November 10, but failed to leave a message on Subfinder or to call the School office.

When the Plaintiff returned to school on November 11, Medich told her that she was going to recommend the termination of the Plaintiff's employment based upon her failure to properly report her absence on November 10. The Plaintiff objected and told Medich that she had called Subfinder and tried to leave a message. Medich checked with the Central Office and was informed that Subfinder was working properly, and that the sound the Plaintiff heard was a busy signal. Medich also advised the Plaintiff that she had exceeded the twelve hours of paid personal business leave that each instructional assistant is allocated for the school year. The Plaintiff accumulated twelve hours of personal business leave for the absences on November 9 and 10. In addition, the Plaintiff had already used six hours of personal business leave for an absence on November 2. The Plaintiff countered by telling Medich that, in the past, the School secretary had simply re-allocated her hours to another category of leave, such as sick leave.

According to the Defendant, none of the secretaries in the school district had the authority to reallocate a personal business day to another paid leave designation so that an employee could be paid for a day that otherwise exceeded their allocation.

Based on the Plaintiff's previous history of poor attendance, her statement on November 8 that she would stay out until she was fired, her failure to properly report her absence on November 10, and her use of more professional business leave hours than she was allocated, Medich recommended to the Board of School Trustees that the Plaintiff's employment be terminated. The Board approved the recommendation and termination.

**B.     The Plaintiff's Submissions**

The Plaintiff provides several documents to the Court. None of them create a triable issue of fact. Exhibit B is a letter dated November 8, 2010, from Medich asking that the Plaintiff see the principal to discuss the comment the Plaintiff made about being absent until she was fired. The letter contains an unauthenticated handwritten note at the bottom, presumably written by the Plaintiff. The Court cannot rely on the note. Additionally, even if the Court assumes that the Plaintiff did not receive the letter and did not make the statement, the Plaintiff's denials would not be sufficient to defeat summary judgment. It remains undisputed that several individuals told Medich that the Plaintiff made the comment, and there is no evidence to suggest that Medich did not believe them. There is no evidence that the Plaintiff's response (or lack thereof) to the letter was relevant to Medich's decision.

Exhibit C is a letter from the principal dated November 9, 2010, which states the reason for the Plaintiff's termination from employment. These reasons are consistent with the

7

Defendant's evidence.

The Plaintiff presents Exhibit D, labeled as an "agenda" and "minutes" from March 2011, but does not attempt to authenticate them or explain their relevance to this case. Exhibit E is the Plaintiff's unsworn statements regarding the circumstances of her termination, which she addresses to the "Appellate Division," and Exhibits F and G are uncertified copies of a documents pertaining to unemployment benefits. The documents present the Plaintiff's unsworn narrative of her view of the circumstances surrounding her termination.

Exhibits H and I are the Plaintiff's Charge of Discrimination, documents from the EEOC, and Dismissal and Notice of Rights. They do not bring any of the Defendant's evidence into dispute. The next exhibit the Plaintiff presents, Exhibit K, is a document the Plaintiff offered during discovery that lists the staff at Lincoln Primary Center. She does not indicate the importance of this list.

Exhibit L consists of performance evaluations from 2007 and 2008, several years prior to the events at issue in this case. In the 2010 evaluation, which the Plaintiff provides as Exhibit M, the evaluator noted that the Plaintiff needed to improve her attendance.

Exhibit N is a document of unknown information, origin, date, or purpose.

Exhibit O is a portion of the Plaintiff's cell phone bill showing six calls to the same number in South Bend on November 10, 2010. Although the number is, presumably, the phone number for Subfinder, the outgoing calls do not create an inference that the Plaintiff left a message on the Subfinder system—or that Medich did not believe that the Subfinder system was functioning properly and the Plaintiff simply received a busy signal. Additionally, the invoice does not show any calls to a separate South Bend number, such as the School office.

The relevance of Exhibit P is unclear. It is copies of invoice for medical services rendered on December 30, 2010, February 14, 2011, and February 23, 2011, and a Final Notice from Radiology, Inc.

Exhibit Q is a copy of the Plaintiff's certificate for undergraduate degree and other certificates. They do not go to any of the facts submitted by the Defendant or to any of the issues presented by the Plaintiff's claim of discrimination.

In Exhibit R, the Plaintiff provides funeral announcements for funeral services held in 2004, 2006, 2007, 2008, and 2009. The Plaintiff does not explain how these pertain to her absences in 2010 or Medich's decision to terminate her employment.

Exhibit S is an unsworn statement from Delano Jackson that she heard Faith Zehner ask the School secretary on "November 12, 2012," if she was mad because Zehner did not call in again. (Ex. S, ECF No. 27-18.) Although the Court assumes the date is a typographically error, the statement is not sworn and was not provided under the penalties of perjury. In any event, the statement does not contradict any of the Defendant's evidence pertaining to Zehner's attendance on November 12, 2010, which is discussed in more detail below.

Similarly, Exhibit T is a statement from an employee at Lincoln Primary School regarding the continued employment of "someone other than Ms. Virginia D. Coburn, that is of Caucasian descent and has been a 'no call, not show'" at the School. (Ex. T, ECF No. 27-19.) The statement is not in the form of an admissible affidavit or declaration and, as will be discussed further below, is too vague to create an inference of discrimination.

**ANALYSIS**

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove his discrimination case under the direct method or indirect method of proof. *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). "Under the 'direct method,' the plaintiff may avoid summary judgment by presenting sufficient evidence, either direct or circumstantial, that the employer's discriminatory animus motivated an adverse employment action." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). Two types of evidence are permissible under the direct method: (1) evidence that would prove the fact in question without reliance on inference or presumption (direct evidence), and; (2) evidence that allows a fact finder to infer intentional discrimination by the decision maker (circumstantial evidence). *Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (quoting *Troupe*, 20 F.3d at 737); *Venturelli v. ARC Cmty. Servs., Inc.*, 350 F.3d 592, 599 (7th Cir. 2003); *see also Sylvester v. SOS Children's Vills. Ill., Inc.*, 453 F.3d 900, 903–04 (7th Cir. 2006) (clarifying that circumstantial evidence need not have a mosaic-like character to preclude summary judgment but need only allow the trier of fact to infer intentional discrimination by the decisionmaker). This circumstantial evidence "must point directly to a discriminatory reason for the employer's action." *Jordan v. City of Gary, Ind.*, 396 F.3d 825, 832 (7th Cir. 2005); *see also Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005).

The Seventh Circuit has recognized three distinguishable kinds of circumstantial evidence of intentional discrimination: (1) "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn;" (2)

"evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic (pregnancy, sex, race, or whatever) on which an employer is forbidden to base a difference in treatment received systematically better treatment;" and (3) "evidence that the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief." *Troupe*, 20 F.3d at 736.

There is no evidence that would point directly to racial animus as the reason for the Plaintiff's termination. Accordingly, the Court will, as the Defendant has in its Brief in support of summary judgment, analyze the Plaintiff's claim under the indirect burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this method, which provides a means of evaluating indirect evidence of discrimination at the summary judgment stage, *Oest v. Ill. Dept. of Corrs.*, 240 F.3d 605, 612 (7th Cir. 2001), the Plaintiff must first establish a prima facie case of discrimination by showing that: "(1) she is a member of a protected class, (2) her job performance met [the employer's] legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff," *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 750–51 (7th Cir. 2006). If the prima facie case is established, it triggers a presumption of discrimination and the burden then shifts "to the employer to articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802; *Burks*, 464 F.3d at 751. When the employer does so, the burden shifts back to the plaintiff, who must present evidence that the stated reason is a "pretext," which in turn permits an inference of unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 804; *Burks*, 464 F.3d at 751.

It is undisputed that the Plaintiff is a member of a protected class and that she suffered an adverse employment action when she was terminated. With respect to the second element, the Defendant submits that the Plaintiff was not meeting its legitimate expectations in the area of attendance. In her Charge of Discrimination with the EEOC, the Plaintiff claimed that another employee, identified as Faith Z., was not required to follow the same reporting requirements as the Plaintiff and, in fact, did not report an absence on November 12, 2010. The Plaintiff also claimed to Medich that she had been allowed in the past to reallocate her hours from personal business leave to another type of leave when she would have otherwise exceeded her allowable hours for personal business.

"Where a plaintiff claims . . . that an employer's legitimate expectations were disparately applied, the second and fourth elements of the *prima facie* case are closely intertwined with the pretext analysis, and the two inquiries may be merged and considered together." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008); *see also Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 477–78 (7th Cir. 2010) ("In some cases . . . the issue of satisfactory performance and the question of pretext overlap" because "[w]hen the employer asserts as the nondiscriminatory reason for termination that the employee was not meeting legitimate job expectations, the credibility of the employer's assertion is at issue for both the second element of the plaintiff's prima facie case and the pretext analysis."); *Peele v. Country Mutual Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) ("When a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate manner . . . the second and fourth prongs of *McDonnell Douglas* merge—allowing the plaintiff to establish a prima facie case, stave off summary judgment for the time being, and proceed to the

pretext inquiry."); *Curry v. Menard*, 270 F.3d 473, 478 (7th Cir. 2001) (stating that a court can assume that a plaintiff has met the legitimate expectations element of a prima facie test where that element dovetails with the issue of pretext); *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 886 (7th Cir. 2001) ("As we have pointed out on several occasions, this issue of satisfactory job performance often focuses on the same circumstances as must be scrutinized with respect to the matter of pretext."); *Oest*, 240 F.3d at 612 n.3 (noting that the "district court correctly held that the second prong, meeting the employer's legitimate business expectations, was not necessary to the analysis" because "the people judging [the plaintiff's] performance were the same she accused of discriminating against her"); *Flores v. Preferred Tech. Group*, 182 F.3d 512, 515 (7th Cir. 1999) (stating that it made "little sense" to discuss whether the plaintiff was meeting her employer's reasonable expectations where she admitted that she broke the rules but claimed that the employer disciplined her more harshly than non-Hispanic rule-breakers). Because, here, the Plaintiff's prima facie case overlaps with the similarly-situated prong and the pretext analysis, the Court will proceed directly to the question of pretext.

In the context of employment discrimination cases, a pretext is a dishonest explanation for the adverse employment action. *See Faas*, 532 F.3d at 642. To show that the defendant's proffered reason is pretextual, the plaintiff "must identify such weaknesses, implausibilities, inconsistencies, or contradictions in the purported reasons that a jury could find them unworthy of credence and hence infer that [the defendant] did not act for the asserted non-discriminatory reasons." *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 541 (7th Cir. 2007). If the defendant honestly believed the reasons it gave, the plaintiff's effort to show pretext fails, regardless of whether that reason was "foolish, trivial or baseless." *Id.*; *see also Forrester v. Rauland-Borg*

13

*Corp.*, 453 F.3d 416, 417 (7th Cir. 2006) ("[T]he question in a discrimination case is not whether the employer's stated nondiscriminatory ground for the action of which the plaintiff is complaining is correct but whether it is the true ground of the employer's action."). Thus, the plaintiff cannot establish pretext merely by showing that defendant's decision to terminate him was "mistaken" or "ill considered." *Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005) (quoting *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000)).

Thus, the pretext inquiry is not whether the Plaintiff was actually meeting attendance expectations. Rather, the Court's inquiry is whether Medich's proffered reason for recommending the Plaintiff's termination—her attendance issues—was a lie to cover up a true motivation of racial animus. Medich had information from three teachers that, after learning of a schedule change, the Plaintiff stated that she intended to be absent until she was fired. The Plaintiff has presented no evidence to suggest that Medich did not honestly believe that the teachers accurately reported what the Plaintiff said and the circumstances in which she said it. Moreover, the Plaintiff then proceeded to be absent for two days. It is undisputed that, for the second day of her absence, the Plaintiff did not leave a message with Subfinder or the School office, the known procedure for reporting an absence. Although the Plaintiff claims that Subfinder was not working properly, she has no evidence to dispute that Medich instead believed the information she received from the Central Office, which was that Subfinder was functioning correctly, and that the Plaintiff simply failed to keep calling until she could leave a message. Although the Plaintiff may not agree that it should be incumbent upon her to keep calling, this does not call into question the Defendant's reliance on her failure as a reason to support her termination. *See Nawrot v. CPC Int'l*, 277 F.3d 896, 906 (7th Cir. 2002) (stating that the only

concern in the pretext analysis is the honesty of the employer's explanation and stressing that courts "do not sit as a "super-personnel department that reexamines an entity's business decision and reviews the propriety of the decision'").

Additionally, the Plaintiff does not deny that she exceeded her allowable personal business leave hours for the school year. Her only excuse, that she was allowed to do it in the past by the secretary, does not create an inference that Medich was lying when she presented the exceeded hours as a reason for the Plaintiff's termination. The Defendant has presented evidence that none of the school secretaries had the authority to make such allocations. Thus, even if it had been done for the Plaintiff in the past, it is not unbelievable that Medich would reject it as a reason to allow her to do it during the 2010–2011 school year, particularly since Medich had already stressed to the Plaintiff the importance of her daily attendance as the instructional assistant for the Explorer Program, including informing the Plaintiff that past practices allowing certain absences would not be allowed to continue.

The Plaintiff attempts to identify a contradiction and inconsistency by alleging that another employee, Faith Zehner, did not report her absence but was treated more favorably. Zehner was a math coach at Lincoln. However, on November 12, 2010, the day the Plaintiff claims Zehner failed to report her absence, Zehner was not actually absent, but was attending math coach's professional development outside the Lincoln school building as she was required to do every Friday. The Plaintiff has not presented any evidence to dispute this fact.

Nor is there any evidence in the record that any other employee was allowed to be absent without following the procedures for calling Subfinder or the School office. The Plaintiff unsuccessfully attempts to present evidence of such disparate treatment through the statement of

15

Anthony Moore, who states that he is "an employee at Lincoln Primary School" who "can testify that there is someone other than Ms. Virgina D. Coburn, that is of Caucasian descent and has been a 'no call, no show' at Lincoln Primary School, and is currently working there." (Pl.'s Ex. T, ECF No. 27-19.) The statement is insufficient to establish a genuine issue of material fact. First, because Moore's statement was not sworn to before a notary, it constitutes an unsworn declaration and can be admissible only pursuant to 28 U.S.C. § 1746, which requires the person offering the statement to declare under "penalty of perjury" that his statement is true and correct. Moore did not attest to the truth of his statements under penalty of perjury, and the Court cannot consider his statement as admissible evidence. Second, under Federal Rule of Civil Procedure 56(c)(4), any affidavit or declaration "used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." When considering a motion for summary judgment, a court must disregard parts of an affidavit that fail to comply with this rule. *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004); *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987). Moore's statement is a conclusory allegations lacking supporting evidence. There is no indication that his conclusion is grounded in observation or that he was in a position to know the relevant circumstances. Even if the Court could assume that another employee was not terminated for being a no call, no show, there is insufficient detail about this person's circumstances (in fact, none), to provide a meaningful comparison. *See Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 675–76 (7th Cir. 2012) (emphasizing that similarly situated employee must be similar in all material respects to suggest that the plaintiff was singled out for discriminatory reason); *Crawford v. Ind. Harbor*

*Belt R.R. Co.*, 461 F.3d 844, 846 (7th Cir. 2006) (stating that the plaintiff must show that "the members of the comparison group are sufficiently comparable to [the plaintiff] to suggest that [the plaintiff] was singled out for worse treatment").

"At summary judgment, . . . saying so doesn't make it so; summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact, and it [i]s not the district court's job to sift through the record and make [the nonmovant's] case for him." *U.S. v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010). The evidence in the record is that Medich decided to recommend that the Plaintiff's employment be terminated after Medich identified problems with the Plaintiff's attendance and her attitude about a schedule change. The Plaintiff has not presented evidence that undermines the credibility of these reasons. There are no triable issues of material fact and the Defendant is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant South Bend Community School Corporation's Motion for Summary Judgment [ECF No. 19]. The Clerk will enter judgment in favor of the Defendant and against the Plaintiff.

SO ORDERED on December 12, 2012.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION